UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DJO GLOBAL, INC., a California Corporation, DJO, LLC, a Delaware limited liability corporation, and DJO CONSUMER, LLC, a Delaware limited liability corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ERIC GLADER, an individual, ANNEKE MARVIN, an individual, POWERDOT, INC., a Delaware corporation, and SMARTMISSIMO TECHNOLOGIES PTE LTD., a Singapore private limited company,<br><br>Defendants. | Case No.: 3:16-cv-02208-CAB (NLS)<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS**<br>**[Doc. No. 22]** |

This matter comes before the Court on Defendants Eric Glader ("Glader"), Anneke Marvin ("Marvin"), Powerdot, Inc. ("Powerdot") and Smartmissimo Technologies PTE LTD's ("Smartmissimo") (collectively "Defendants") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) . [Doc. No. 22.] The motion has been fully briefed and the Court finds it suitable for determination on the papers and without oral

argument. *See* S.D. Cal. CivLR 7.1(d)(1). For the reasons set forth below, Defendant's motion to dismiss [Doc. No. 18] is **GRANTED in PART** and **DENIED in PART**.

I.  BACKGROUND

On September 6, 2016, Plaintiffs DJO Global, Inc. ("DJO Global"), DJO LLC and DJO Consumer, LLC ("DJO Consumer") (collectively "Plaintiffs" or "DJO") filed suit against Defendants alleging patent infringement, copyright infringement, violation of the Defend Trade Secrets Act, violation of the Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.*, breach of contract, breach of fiduciary duty and duty of loyalty, tortious interference with contract, tortious interference with prospective economic advantage, unfair business practices in violation of Cal. Bus & Prof. Code § 17200 *et seq.*, and civil conspiracy. [Doc. No. 1.]

Plaintiffs allege that Defendants conspired to steal, and successfully stole and utilized, DJO's trade secrets and other confidential information in order to unfairly compete with DJO. [*Id.* ¶¶ 2, 224-227.] Plaintiffs assert that while employed by DJO, Glader and Marvin diverted endorsement, sponsorship, and other marketing opportunities away from DJO to their new employer Powerdot and encouraged DJO employees and consultants to join Powerdot. [*Id.* 24, 60-76, 81-87, 204, 207, 214-215.] Plaintiffs further allege that Smartmissimo's Powerdot Model No. PD-1 ("PD-1") infringes at least four patents owned[1] by DJO, LLC. [*Id.* ¶¶ 88-95.]

On October 28, 2016, Defendants moved to dismiss twelve of Plaintiffs' sixteen claims pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc. No. 22.] Plaintiffs filed their opposition to the motion and the Defendants replied. [Doc. Nos. 25, 26.]

---

[1] The patents owned by DJO LLC in question are U.S. Pat. Nos. 8,977,366 (the "'366 patent"), 8,452,409 (the "'409 patent"), 9,220,896 (the "'896 patent") and 9,242,091 (the "'091 patent").

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted).

## III. DISCUSSION

Defendants make multiple arguments in support of their motion to dismiss. First, Defendants argue that during all relevant times Glader and Marvin were agents or employees of Powerdot and therefore, as a matter of law, cannot have conspired with Powerdot. Second, Defendants argue that the Defend Trade Secret Act ("DTSA") claim fails because the statute did not become effective until May 11, 2016, after the alleged acts of misappropriation, and is not to be applied retroactively. Third, Defendants argue that the California Uniform Trade Secrets Act ("CUTSA") preempts Plaintiffs' common law causes of action, as they all depend on and/or are materially indistinguishable from the trade secrets violations claim. Fourth, Defendants argue that the unfair competition claim under California Business and Professions Code, § 17200, *et seq.* fails as it is preempted by CUTSA and it inadequately pled. Fifth, in regard to the patent claims, Defendants argue that DJO Global and DJO Consumer do not have standing to assert patent and copyright infringement and that the patent infringement allegations lack the requisite specificity.

### A. Patent and Copyright Infringement Claims

Defendants make two separate arguments related to the infringement claims. They first assert that DJO Global and DJO Consumer to do not have standing to sue for patent or copyright infringement. Secondly, Defendants argue that Plaintiffs have failed to meet the pleading standards of the Federal Rules of Civil Procedure.

### 1. Standing to Sue

Defendants argue that DJO Global and DJO Consumer are neither the owners, successors in title nor exclusive licensees of the patents or copyrights at issue and thus do not have standing to sue. [Doc. No. 22-1 pg. 25.[2]] Plaintiffs assert that even if Defendants are correct, at most DJO Global and DJO Consumer are misjoined as to the patent and copyright claims. [Doc. No. 25 pg. 23.] Neither party disputes that DJO LLC possess all right, title and interest to the asserted patents and copyright registrations.

The Patent Act provides that a "patentee" is entitled to bring a civil action for infringement of his patent. 35 U.S.C. § 281. The term "patentee" includes not only the patentee to whom the patent issued but also the successors in title to the patentee. 35 U.S.C. § 100(d). A suit for infringement of patent rights ordinarily must be brought by a party holding legal title to the patent. *Propat Intern. Corp. v. RPost, Inc.,* 473 F.3d 1187, 1189 (Fed. Cir. 2007). "A patentee may transfer title to a patent by assignment, and the assignee may be deemed the effective patentee under 35 U.S.C § 281 for purposes of holding standing to sue another for patent infringement in its own name." *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1340 (Fed. Cir. 2006) (citation omitted) (the central determining fact is whether the transferee obtained a right to sue for infringement to enforce the patent).

No rights to the patents at issue have been transferred to either DJO Global or DJO Consumer, therefore they lack standing to sue. *Sicom Sys., Ltd. v. Agilent Techs., Inc.,* 427

---

[2] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

F.3d 971, 975-76 (Fed. Cir. 2005) (standing must be present at the time the suit is brought). Accordingly, the Court **GRANTS** Defendants' motion to dismiss DJO Global and DJO Consumer as co-plaintiffs from the patent and copyright claims.

## 2. Failure to State a Claim

Defendants contend that the complaint does not meet the pleading requirements because it does not provide enough information and does not put them on notice of the purported infringement. [Doc. No. 22-1 pgs. 26-33.]

To state a claim for direct patent infringement, a plaintiff must alleged that the defendant, "without authority [,] makes, uses, offers to sell, or sells any patented invention." 35 U.S.C. § 271(a); *see also Joy Techs., Inc. v. Flakt, Inc.,* 6 F.3d 770, 773 (Fed. Cir. 1993) (citation omitted). "To prove infringement, the patentee must show that an accused product embodies all limitations of the claim either literally or by the doctrine of equivalents." *Cephalon, Inc. v. Watson Pharms., Inc.,* 707 F.3d 13390, 1340 (Fed. Cir. 2013).

On December 1, 2015, the amended Federal Rules of Civil Procedure took effect. Prior to the amendment patent cases were subject to different pleadings requirements than the *Iqbal/Twombly* standards laid out by the Supreme Court. *See, e.g., Rembrandt Patent Innovations LLC v. Apple Inc.,* Nos. C 14-05094 (WHA), C 14-05093 WHA, 2015 WL 8607390, at *2 (N.D. Cal. Dec. 13, 2015) (Form 18 contains a sample patent infringement complaint that "merely included an allegation that the defendant infringed the asserted patent by making, using, or selling electric motors without specifying the model of the accused motors."); *In re Bill of Lading*, 681 F.3d 1323, 1323 (Fed. Cir. 2012) ("[T]o the extent the parties argue that *Twombly* and its progeny conflict with the Forms and create differing pleadings requirements, the Forms control.") The amended Rules abrogated Rule 84, with the notation that it was "no longer necessary." *See* FED. R. CIV. P. 84 advisory committee's note to 2015 amendment. Following the repealing of Rule 84, the pleading standards construed in *Iqbal* and *Twombly* govern patent cases.

In order to plead direct infringement under *Twombly* and *Iqbal*, a plaintiff must plausibly allege that a defendant directly infringes each limitation in at least one asserted claim. *See e.Digital Corp. v. iBaby Labs, Inc.,* Case No. 15-CV-05790-JST, 2016 WL 4427209, at *3 (N.D. Cal. Aug. 22, 2016) (collecting cases). A plaintiff must therefore simply provide sufficient factual allegations concerning how each limitation of the asserted claims is plausibly met by the accused products. *See e.Digital*, 2016 WL 4427209, at *4 n. 2 ("To require a patentee to plausibly allege that the accused product practices each of the limitations in at least one asserted claim should not impose an undue burden on most plaintiffs, because a patentee is already required to perform an adequate pre-filing investigation before bringing suit") (citation omitted); *see also TeleSign Corp. v. Twilio, Inc.,* No. CV 16-2106 PSG (SSX), 2016 WL 4703873, at *4 (C.D. Cal. Aug. 3, 2016) ("[I]t is irrelevant at this stage whether Plaintiff's allegations are accurate, as the Court accepts all of Plaintiff's allegations as true. . . . The Court only requires that Plaintiff plausibly alleges that a product or products of Defendant infringes on at last one claim of the [asserted] patent.").

Defendants argue that contrary to the pleading standards, Plaintiffs have lumped the descriptions of the patents together, parroted only a portion of the asserted claim elements and concluded that the accused device meets every limitation of the claim. [Doc. No. 22-1 pgs. 26-30.] Further, Defendants asserts that Plaintiffs have also not met the pleading standards as Powerdot and Smartmissimo have not been provided with notice of the basis of the allegations against them on an individual basis. [Doc. No. 22-1 pgs. 30-31.] Additionally, Defendants contend that Plaintiffs have failed to concisely plead their patent infringement allegations with the result that Powerdot and Smartmissimo are not on fair notice of what kind of patent infringement Plaintiffs are alleging against them. [Doc No. 22-1 pg. 32.]

Plaintiffs counter that the asserted patent claims are apparatus claims, involving structural features that are readily identifiable through mere inspection, that the complaint

specifies each Defendants' infringing conduct and that they are only asserting one type of infringement that is self-evident from the complaint. [Doc. No. 25 pgs. 24-29.]

Plaintiff DJO LLC has plausibly pled claims of direct patent infringement of the four asserted patents. With regard to the '409 patent and the '091 patent, defendants assert that the complaint fails to recite facts supporting the specific limitation of Claim 1 of the '409 patent and Claim 1 of the '091 patent, reciting that the "intermediate component has conducting lines that provide electrical communication between the patient interface component [or, a patient] and the controller component." The complaint however asserts that accused product has an intermediate component (e.g. lead cable) that connects the POWERDOT device (e.g. controller component) to a pair of electrode pads (e.g. a patient interface component). For pleading purposes, it can reasonably be inferred that the lead cable provides electrical communication between the identified components. As to these two patents, the Court finds the allegations sufficient to put the defendants on notice as to why the accused product infringes.

With regard to the '366 patent and the '896 patent, Defendants assert that the complaint fails to recite facts supporting the limitation of Claim 1 of the '366 patent and Claim 7 of the '896 patent, reciting that the receptacle comprises "at least one conductor configured to couple to the electrical signal generator to receive the electrical signal." Although the complaint identifies that the accused device has a receptacle it provides no specific reference to a conductor as part of that receptacle. The accused device is however described as having an electrode that interfaces with the electrical signal generator. For pleading purposes, it can reasonably be inferred that the conductor limitation is present in the accused product. The Court finds the allegations sufficient to put the Defendants on notice as to why the accused product infringes these patent claims and any deficiency will be resolved by the provision of preliminary infringement contentions pursuant to this District's Local Patent Rules.

Plaintiff is not asserting claims of indirect infringement. The complaint is sufficient in its assertion that Smartmissimo infringes by importing and selling the accused device in

the United States. The complaint is also sufficient in its allegations that Powerdot, Inc., was established to market the accused device in the United States and it can reasonably be inferred that Powerdot, Inc. infringes by offering the accused device for sale in the United States.

Finally, Defendants argue that Plaintiffs willful infringement claim must fail because Plaintiffs have failed to allege that any Defendant had knowledge of the patents-in-suit prior to the filing of the action. [Doc. No. 22-1 pgs. 32-33.] Plaintiffs' position is that they have not alleged willful patent infringement and that it was not their intent, at this stage of the litigation to do so. [Doc. No. 25 pg. 29.]

Thus, the Court **DENIES** Defendants' motion to dismiss claims one through four.

**B. Defend Trade Secrets Act Claim**

Defendants argue that the Defend Trade Secret Act ("DTSA") claim against them must be dismissed because the statute did not become effective until after the alleged acts of misappropriation occurred. [Doc. No. 22-1 pgs. 15-17.] Relatedly, Defendants assert that "continuing misappropriation constitutes a single claim of misappropriation" under the plain language of the DTSA." [*Id.* at 17:13-14.]

On May 11, 2016, the DTSA was enacted and applies to "any misappropriation . . . for which any act occurs" after the effective date of the Act. Pub. L. No. 114-153, § 2(e). The DTSA created a private cause of action for an owner of a trade secret that is "misappropriated" if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce. 18 U.S.C. § 1836. The statute defines "misappropriation" as: "(A) acquisition of a trade secret of another person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent. . . ." 18 U.S.C. § 1839 (5)(A)-(B).

Defendants are correct that Plaintiffs cannot rely on the alleged acquisition of the trade secrets to prove a violation of the statute. As alleged, the acquisition of the trade

8

secrets would have had to have occurred before Glader and Marvin left DJO[3], which occurred before the enactment of the DTSA. [Doc. No. 1 ¶¶ 64, 76.] Therefore, Plaintiffs cannot proceed under an acquisition theory of misappropriation. However, the Court does not agree with Defendants conclusory assertion that the disclosure and use of the allegedly misappropriate trade secrets "necessarily" occurred immediately upon Glader and Marvin joining Powerdot.

Here, Plaintiffs have alleged instances where, after May 11, 2016, Defendants used DJO's trade secrets regarding celebrity endorsement deals to create and execute their own endorsement agreements with DJO's former endorsers. [*Id.* ¶¶ 134-138.] For example, Plaintiffs alleges that "during April 2016 or early May 2016" Powerdot signed Celebrity Athletes A, B, and C. [*Id.* ¶¶ 82-84.] Further, the complaint alleges that "in or around June 2016" Celebrity D signed with Powerdot to promote its product. [*Id.* ¶ 85.] Additionally, Plaintiffs assert that the marketing plan Glader developed for Powerdot in January 2016, while employed by DJO, "has now been enacted that plan to improve the market position of the Powerdot product." [*Id.* ¶ 60.] Theses allegations support an inference that Defendants disclosed and/or used DJOs trade secrets after the effective date of May 11, 2016. *See Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, 15-CV-211(LGS)(RLE), 2016 WL 5338550, at *6 (S.D.N.Y Sep 23, 2016) (inclusion of pre-enactment conduct in amended DTSA claim does not prohibit claim because the allegation of continued use of trade secret "is the wrongful act [that] continues to occur after the date of the enactment of the DTSA").

Similarly, the Court is not persuaded by Defendants' continuing misappropriation contention. [Doc. No. 22-1 pg. 17.] While the language quoted by Defendants does indeed appear in the statute, it is specific to the subsection of the Act that addresses when a claim

---

[3] According to the allegations in the complaint the separation agreement entered into by DJO and Glader was executed on February 19, 2016, [Doc. No. 1 ¶ 64], and Marvin stopped working at DJO in March 2016 [*Id.* ¶ 76].

accrues for statute of limitation purposes. 18 U.S.C. § 1836 (d). The quoted language is preceded by the caveat "For purposes of this subsection" and continues "a continuing misappropriation constitutes a single claim of misappropriation." *Id.* Thus, the Court concludes this subsection of the statute is inapplicable to this issues in this case. *See Adams Arms, LLC v. Unified Weapon Sys., Inc.*, Case No. 8:16-cv-1503-T-33AEP, 2016 WL 5391394, at *6 (M.D. Fla. Sep. 27, 2016) (Subsection 1836(b) only addresses when a claim accrues for statute of limitations purposes and is not applicable when deciding whether an owner may recover under DTSA when the misappropriation occurs both before and after the effective date.)

Thus, the Court **DENIES** the motion to dismiss claim six.

**C. Common Law Claims Not Displaced by California Uniform Trade Secrets Act.**

Defendants argue that the common law claims against them are preempted[4] by the California Uniform Trade Secrets Act ("CUTSA") cause of action because they each depend on and/or are materially indistinguishable from the trade secrets violations claim. [Doc. No. 22-1 pgs. 17-21.]

"Among other things, CUTSA defines key terms, provides various forms of relief, spells out methods for preserving the secrecy of trade secrets, and sets forth the limitations period." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 957 (2009) (citation omitted). In California, the UTSA occupies the field as to common law trade secret misappropriation claims. *K.C. Multimedia*, 171 Cal.App.4th at 954.[5] The Act allows for contractual and criminal remedies "whether or not based upon

---

[4] Defendants have used the term "preempted" but the Court will use the term "displaced" when discussing this issue.

[5] The general rule is that statutes do not supplant the common law unless it appears that the Legislature intended to cover the entire subject or, in other words, to 'occupy the field.'" *K.C. Multimedia,* 171 Cal. App. 4th at 954 (quoting *I.E. Associates v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 285 (1985)).

misappropriation of a trade secret" and for civil remedies that are not based upon misappropriation of a trade secret. Cal. Civ. Code § 4326.7(b).

Thus Section 4326.7(b)(2) displaces common law claims that "are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief." *Digital Envoy, Inc. v. Google Inc.*, 370 F. Supp. 2d. 1025, 1035 (N.D. Cal. 2005); *see also Callaway Golf v. Dunlop Slazenger Grp. Ams.*, 318 F. Supp. 2d 216, 219 (D. Del. 2004) (all state law claims based on the same nucleus of facts as the trade secrets claims are preempted under California's UTSA); *K.C. Media,* 171 Cal. App. 4th at 959 ("Depending on the particular facts pleaded, the statute can operate to preempt the specific common law claims..."). However, "state law claims that rely on additional and different facts or theories for liability than those forming the basis for the trade secret claim are not preempted by the UTSA." *Amron Intern. Diving Supply, Inc. v. Hydrolink Diving Commc'n., Inc.*, No. 11-CV-1890-H(JMA), 2011 WL 5025178, at *9 (S.D. Cal. Oct. 21, 2011) (citation omitted). *See also Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 506 (2013), *as modified* (Oct. 29, 2013), *as modified on denial of reh'g* (Nov. 7, 2013) (CUTSA "does not displace noncontract claims that, although related to trade secret misappropriation, are independent and based on facts distinct from the facts that support the misappropriation claim.").

After reviewing the complaint the Court concludes that claims ten, eleven, thirteen, fourteen and sixteen are not based on the identical facts alleged in Plaintiffs' claim for misappropriation of trade secrets. *K.C. Multimedia*, 171 Cal. App. 4th at 954 (citations omitted) ("As reflected in case law decided under the California statute, the determination of whether a claim is based on trade secret misappropriation is largely factual.").

For example, regarding the Tortious Interference Claims[6], Plaintiffs have alleged that Glader and Marvin solicited employees, clients, celebrity athletes and trainers away from DJO to Powerdot, waged a campaign of misinformation in an attempt to drive a wedge

---

[6] Claim 13 is for Tortious Interference with Contact and Claim 14 is for Tortious Interference with Prospective Economic Advantage.

between DJO and the Network[7], and actively sabotaged and diverted sales and sponsorship opportunities from DJO. [Doc. No. 9 ¶¶ 66-75, 78-82, 193, 195-198, 204-207, 212-215.] *See Titan Global LLC v. Organo Gold Int'l, Inc.,* No. 12-cv-2104-LHK, 2012 WL 6019285, *10 (N.D. Cal. Dec. 2, 2012) (holding plaintiff's tortious interference claims not displaced by CUTSA where claims was based upon misappropriated trade secrets and allegations of misleading statements and representations); *Amron,* 2011 WL 5025178, *9-10 (interference with prospective business advantage claim and other common law claims were not preempted "to the extent that these claims rely upon allegations of something other than misappropriation of trade secrets").

Similarly, the Breach of Fiduciary Duty (Claim 10) and Breach of the Duty of Loyalty (Claim 11) claims against Glader are supported by facts unrelated to the misappropriation of trade secrets claim. Plaintiffs have alleged that Glader breached his duty to DJO by engaging in a campaign of misinformation, preparing to form Powerdot, and conspiring with Marvin and Castaneda to divert sales and sponsorship opportunities away from DJO for the benefit of Powerdot. [Doc. No. 1 ¶¶ 64-71, 181, 182, 187.] *See Angelica,* 220 Cal. App. 4th at 508 (holding a breach of fiduciary duty claim not displaced by CUTSA because the theory of liability on this claim "was independent of any trade secret claim"); *Robert Half Intern., Inc. v. Ainsworth,* 68 F. Supp. 3d 1178, 1192-93 (S.D. Cal. 2014) (alleged breach of fiduciary duty claims are not displaced by CUTSA where the alleged breaches do not involve the taking or use of an alleged trade secret or access to confidential and proprietary business information.).

Likewise, Plaintiffs' claim for civil conspiracy is not based solely on Defendants' misappropriation of trade secrets. They allege that prior to the formation of Powerdot, "Glader and Marvin conspired to steal DJO's trade secrets and other confidential

---

[7] The Network is defined in the complaint as one of the world's most popular high-intensity power training fitness organizations. [Doc No. 1 ¶ 4.] Many athletes, agents, and trainers that DJO has worked with are affiliated with the Network. [*Id.*]

information, and to tortuously interfere with DJO's contractual relationships and prospective economic advantage, by actively diverting endorsement, sponsorship and other marketing opportunities away from DJO." [Doc. No. 1 ¶ 224.] Specifically, Plaintiffs allege that Glader and Marvin engaged in acts designed to interfere with DJO's contractual relationships with Castaneda, Williams, Zinn, and Celebrity Athlete D, interfered with DJO's prospective economic advantage with Celebrities A, B and C, and Trainers A, B, C, D, and E, and intentionally withheld and diverted communications regarding sales and sponsorship opportunities intended for DJO to Powerdot. [*Id.* ¶ 225.] *See Amron*, 2011 WL 5025168, at *9-*10 (rejecting assertion that CUTSA displaces civil conspiracy claim); *Titan Global,* 2012 WL 6019285, at *10 (civil conspiracy claim not displaced by CUTSA when "based upon alleged facts beyond trade secret misappropriation.").

Several courts have held that the question of whether claims are superseded by CUTSA is a fact-based inquiry better suited for summary judgment than a motion to dismiss. *See, e.g., Bryant v. Mattel, Inc.,* No. CV 04-9049 DOC (RNBx), 2010 WL 3705668, at *22 (C.D. Cal. Aug. 2, 2010) (resolving question of whether protected information was a trade secret requires an analysis of the facts that can be addressed at summary judgment and/or trial); *Amron,* 2011 WL 5025178 at *10 ("At this point in the case, the status of the information is merely a matter of allegation and until the distinction is made between [plaintiff's] allegedly misappropriated trade secret information and its confidential or non-confidential proprietary non-trade secret information, the question of preemption should not be addressed.") (collecting cases); *U.S. Legal Support, Inc. v. Hofioni,* No. CIV. S-13-01770 LKK/AC, 2013 WL 6844756, at *11 (E.D. Cal. Dec. 20, 2013) ("The court is of the view that the question of supersession is properly addressed at summary judgment.").

Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiffs' tenth, eleventh, thirteenth, fourteenth and sixteenth causes of action based on preemption.

**D. California Unfair Competition Claim**

Defendants make two arguments in support of their motion to dismiss Plaintiffs' claim for violation of Business and Professions Code, § 17200, *et seq.,* the California Unfair Competition Law ("UCL"). First, they contend that the UCL claim is preempted by CUTSA [Doc. No. 22-1 pg. 21.] Second, they assert that Plaintiffs have failed to state a claim for relief under any prong of the UCL, at least as against Glader and Marvin, and presume that Plaintiffs' non-CUTSA claims are superseded. [*Id.* pgs. 21- 25.] Plaintiffs counter that their claim is not displaced and that they have adequately alleged violations of the "unlawful" and "unfair prongs of the UCL. [Doc. No. 25 pgs. 18-22.]

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the false advertising law (§ 17500 *et seq.*)]." Cal. Bus. & Prof. Code § 17200. The statute establishes three varieties of unfair competition - acts or practices which are (1) unlawful, (2) unfair, or (3) fraudulent. *Cel-Tech Commc'n, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999).

Unlawful practices are "any practices forbidden by law, be it civil, criminal, federal, state or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court,* 27 Cal. App. 4th 832, 838-839 (1994)). A common law violation such as breach of contract is insufficient.[8] *Shroyer v. New Cingular Wireless Services. Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010). The unlawful prong of "Section 17200 borrows violations from other laws by making them independently actionable as unfair competitive practices." *CRST Van Expedited, Inc. v. Werner Enter., Inc.,* 479 F.3d 1099, 1107 (9th Cir. 2007). Adequately pled causes of action for trade secrets misappropriation, breach of fiduciary duty, breach of the duty of loyalty and tortious interference will support claims under the UCL's

---

[8] *See also Nat'l Rural Telecomm. Co-op v. DIRECTV, Inc.,* 319 F. Supp. 2d 1059, 1074 (C.D. Cal. 2003) ("breach of contract may form the predicate for a section 17200 claim provided it also constitutes conduct that is unlawful, or unfair, or fraudulent.") (quoting *Watson Labs. Inc. v. Rhone-Poulenc Rorer, Inc.,* 178 F. Supp. 2d 1099, 1117 n. 12 (C.D. Cal. 2001) (emphasis and quotation marks omitted.).

"unlawful" prong. *See, e.g., CRST Van,* 479 F.3d at 1107 ("intentional interference with contract is a tortious violation of duties imposed by law"); *Hofioni,* 2013 WL 6844756, at *13 (adequately pled causes of action for trade secrets misappropriation, breach of contract, breach of the duty of loyalty, breach of the duty of confidence, conversion and fraud will support claims under the UCL's "unlawful" prong); *Hanger Prosthetic & Orthotics, Inc. v. Capstone Orthopedic, Inc.,* 556 F. Supp. 2d 1122, 1139 (E.D. Cal. 2008) (finding that trade secret misappropriation supports a UCL claim of "unlawful" business practices); *Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, No. C-07-0635JCS, 2007 WL 1455903, at * 3 (N.D. Cal. May 16, 2007) (an adequately pled intentional interference with contractual relations can be the base for a UCL claim because interference with a contract is a tortious violation of duties imposed by law).

"Unfair simply means any practices whose harm to the victim outweighs its benefits." *Shroyer*, 622 F.3d at 1044 (quoting *Saunders,* 27 Cal. App. 4th at 839). Notably, "it is well-settled that misappropriation of trade secrets in violation of CUTSA can form the predicate for an unfair competition claim under the UCL." *Hofioni,* 2013 WL 6844756 at *14 (citing *Courtesy Temp. Servs. v. Camacho*, 222 Cal.App.3d 1278) ("[T]he cases are legion holding that a former employee's use of confidential information obtained from this former employer to compete with him and to solicit the business of his former employer's customers, is regarded as unfair competition.").

Here, Plaintiffs have alleged that Powerdot, Glader and Marvin engaged in "numerous unlawful business practices" including infringing patent and copyright rights, misappropriating trade secrets and confidential information, breaches of contracts, breaches of duties, and tortious interferences with their contractual relationships and prospective economic advantage. [Doc. No. 1 ¶ 220.] These allegations are predicated on more than common law claims. Moreover, Defendants did not challenge the adequacy of Plaintiffs' allegations regarding Powerdot, Glader or Marvin's misappropriation of trade secrets. Assuming *arguendo*, that the misappropriation of trade secrets claim against the three defendants is sufficient as currently pled, and considering the adequately pled tortious

interference claims, the Court concludes that these claims are sufficient to provide a basis for alleging "unlawful" and "unfair" conduct under the UCL. Accordingly, the Court finds that Plaintiffs' Section 17200 claim under the "unlawful" and "unfair" prongs may proceed against Powerdot, Glader and Marvin. As a result Defendants' motion to dismiss claim fifteen is **DENIED.**[9]

### E. Civil Conspiracy Claim

Defendants argue that as the corporate agents or employees of Powerdot, Glader and Marvin cannot legally conspire with Powerdot. [Doc. No. 22-1 pgs. 13-15.] Further, Defendants assert that Glader and Marvin cannot conspire between themselves if they act within the scope of their employment with Powerdot. [*Id.*]

> "[T]he basis of a civil conspiracy is the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act." The conspiring defendants must also have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose. . . . Knowledge of the planned tort must be combined with intent to aid in its commission. . . . While knowledge and intent "may be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances" "[c]onspiracies cannot be established by suspicions. . . . There must be evidence of some participation or interest in the commission of the offense."

*Hanger,* 556 F. Supp. 2d at 1139 (quoting first *Kidron v. Movie Acquisition Corp.,* 40 Cal. App. 4th 1571 (1995) (quoting second 1 Levy et al., Cal. Torts (1995) Civil Conspiracy, § 9.03[2], p. 9-12); (quoting third *Wyatt v. Union Mortg. Co.,* 24 Cal.3d 773, 785 (1975); quoting fourth *Davis v. Superior Court*, 175 Cal. App. 2d 8, 23 (1959)).

Plaintiffs' conspiracy claim alleges that "[b]efore Powerdot was formed by Glader, Glader and Marvin conspired, while still employed by DJO, to steal DJO's secrets and other confidential information, and to tortiously interfere with DJO's contractual

---

[9] Defendants argue that Plaintiffs' claim under the "fraud" prong fails. [Doc. No. 22-1 pg. 24.] But Plaintiffs are not bringing a UCL claim under this prong.

16

relationships and prospective economic advantage, by actively diverting endorsement, sponsorship and other marketing opportunities away from DJO. Glader and Marvin agreed to achieve these unlawful objectives by using their inside knowledge of DJO's endorsement, sponsorship and other marketing opportunities against DJO, for the eventual benefit of Powerdot." [Doc. No. 1 ¶ 224.] In support, the complaint provides examples of acts performed by Glader and Marvin in furtherance of the conspiracy that occurred before Glader and Marvin were concurrently employed at Powerdot.[10] [*Id.* ¶¶ 62-63, 65-68, 72-74, 225.]

As to Glader, the allegations are sufficient to infer that he conspired with Marvin and Castaneda to commit wrongful acts for the benefit of the PD-1 device while employed at DJO. [*Id.* ¶¶ 61-65, 73, 74, 182, 187.] Further, it can be inferred that Glader intended to aid the torts committed after his exit from DJO in February 2016 by establishing Powerdot as a competing business to DJO. Similarly, the allegations regarding Marvin are sufficiently pled to infer that she agreed to and aided the conspiracy because she assisted in misappropriating the trade secrets and redirected Celebrity Clients and trainers away from DJO to Powerdot while it was being created and after it was formed. [*Id.* ¶¶ 66-76, 81-82, 196, 197, 198.] Moreover, Marvin went to work for Powerdot shortly after its formation. [*Id.* ¶ 76.]

Likewise, the allegations regarding Powerdot's participation in the conspiracy to commit the torts and misappropriate the trade secrets are adequately pled. *See Hanger,* 556 F. Supp. 2d at 1138-1140 (denying defendant's summary judgment motion finding defendant could be liable for conspiring with its CEO, a former Vice President of Plaintiff's, and an employee of Plaintiff's to commit torts that occurred after company's formation). Powerdot was formed by Glader in March 15, 2016. [Doc. No. 1 ¶ 65.] The

---

[10] Defendants are correct that an entity cannot "conspire" with its employees or agents. *See Applied Equip. Corp. v/ Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 512, n. 4 (1994). However, the Court does not agree with the conclusory assertion that Marvin and Glader were acting as agents or employees of Powerdot during the entire period covered by the allegations in the complaint.

complaint contains allegations of tortious interference with DJO's contractual relationships and prospective economic advantage that occurred after Powerdot was incorporated. Furthermore, there is no evidence currently before the Court that supports Defendants assertion and presumption that Marvin went to work for Powerdot "around the same time" that Powerdot was incorporated on March 15, 2016. [Doc. No. 22-1 pg. 5.] In fact, the complaint includes allegations regarding Marvin's behavior that support the conclusion that they occurred after Powerdot's incorporation but before Marvin went to work there.

For example, it is alleged that on March 16, 2016, Marvin forwarded to Glader's personal email an inquiry regarding a sponsorship opportunity for Compex but did not share the opportunity with anyone at DJO. [Doc. No. 1 ¶ 74.] Further, the complaint recites two instances when Castaneda, another former DJO employee, helped Marvin divert business opportunities to Powerdot. It is alleged that on March 21, 2016, Castaneda forwarded a request for a demonstration of Compex brand products from a Network affiliated gym to Marvin. [*Id.* ¶ 75.] The gym later held an event sponsored by Powerdot and has never held an event sponsored by DJO since submitting this request. [*Id.*] The complaint also alleges that on March 30, 2016, Castaneda, at Marvin's request, contacted Celebrity Athlete C, to discuss her contract with DJO. [*Id.* ¶ 81.] In April or May of 2016 it is alleged that Celebrity Athlete C signed an exclusive sponsorship deal to promote PD-1. [*Id.* ¶ 82.] Nothing in these allegations leads the Court to infer that Marvin was working as an agent or employee of Powerdot's during these interactions.

In light of these allegations, the Court finds that Plaintiffs have adequately pled a civil conspiracy between Glader and Marvin before Powerdot was formed and between Glader, Marvin and Powerdot before Marvin's contract with DJO ended. Accordingly, the Court **DENIES** Defendants' motion to dismiss claim sixteen.

## IV. CONCLUSION

For the reasons explained above, Defendants' motion is **GRANTED IN PART AND DENIED IN PART.**

**IT IS SO ORDERED.**

Dated: December 22, 2016

_____
Hon. Cathy Ann Bencivengo
United States District Judge